**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESSICA KELLY,<br><br>               Plaintiff-Appellant,<br><br>   v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner Social Security,<br><br>               Defendant-Appellee. | No.   15-35391<br><br>D.C. No. 6:13-cv-02317-BR<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Submitted March 19, 2018 [**]

Before: FARRIS, CANBY, and LEAVY, Circuit Judges.

Jessica Kelly appeals the district court's affirmance of the Commissioner of

Social Security's denial of her application for disability insurance benefits under

Title II of the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

and 42 U.S.C. § 405(g). We review de novo, *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016), and we affirm.

The administrative law judge ("ALJ") did not err by discounting the opinion of examining psychologist Dr. Eckstein and affording more weight to that of examining psychologist Dr. McGrath. The doctors' opinions diverged regarding Kelly's Global Assessment of Functioning ("GAF") score, with Dr. McGrath assigning Kelly a score of 57, indicating moderate symptoms or functional limitations, and Dr. Eckstein concluding Kelly had a GAF score of 45, suggesting serious symptoms or limitations. Because Dr. Eckstein's opinion was contradicted, the ALJ was required to proffer specific and legitimate reasons supported by substantial evidence for discounting it. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). The ALJ met this standard by pointing to evidence indicating Dr. Eckstein's opinion appeared more speculative in nature than Dr. McGrath's and that the opinion was contradicted by Kelly's work history.

Kelly challenges the reasons the ALJ provided for discounting Dr. Eckstein's opinion; however, her contentions lack merit. The ALJ permissibly relied upon the fact that Dr. Eckstein recommended performing a full intellectual assessment to evaluate comprehensively Kelly's limitations as indicating Dr. Eckstein's conclusions were not based on clinical findings, as Dr. McGrath's were.

*See Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). In addition, the ALJ reasonably construed Kelly's job history, which included positions entailing simple tasks, as contradicting Dr. Eckstein's opinion that she could not handle simple job duties. *See Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

The ALJ did not err by relying on the opinions of the state agency consulting physicians over Dr. Eckstein's opinion. Although "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a[n] . . . examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ found the consulting physicians' opinions were consistent with other record evidence, including Kelly's work history and Dr. McGrath's examination findings.

The ALJ properly accounted for Dr. McGrath's findings in formulating Kelly's Residual Functional Capacity ("RFC"). The ALJ incorporated Dr. McGrath's opinion that Kelly had a marginal capacity concerning construction, organization, and arrangement of objects, as well as poor immediate and short-term visual memory, by restricting her to tasks requiring no more than simple, routine instructions and brief, structured encounters with coworkers and supervisors.

The ALJ did not err in discounting Kelly's statements concerning the extent of her symptoms and their limiting effects. The ALJ applied the requisite two-step framework and cited specific, clear, and convincing reasons for discounting portions of Kelly's statements. *See Trevizo*, 871 F.3d at 678. The ALJ cited that Kelly's alleged onset date conflicted with her statements concerning the disabling effects of her symptoms and that Kelly had stopped working at her last job for reasons unrelated to her medical conditions. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Kelly's argument that the ALJ erred by reversing the manner in which the ALJ is required to determine credibility, by stating Kelly's credibility was limited to the extent her statements were inconsistent with the RFC assessment, lacks merit. Although this "boilerplate language" can be "problematic," its inclusion "is not, by itself, reversible error," and was harmless here, as the ALJ met the substantive requirements for discounting claimant statements. *See Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017).

Kelly's contention that the ALJ erred by interpreting her statement that she had left her last position because she "could not do the job" to mean she left for reasons unrelated to her health issues is belied by the record. When filling out her disability report and answering the question of why she had stopped working,

4

Kelly did not select the answer that she had done so because of her medical conditions, but rather indicated she had stopped "because of other reasons." The Court will uphold the ALJ's reasonable interpretation of this evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

The ALJ did not err in evaluating the lay witness statement from Kelly's friend, Julie Berry. The ALJ gave great weight to Ms. Berry's testimony to the extent that it was consistent with the medical evidence from the state agency physicians. The ALJ's reasoning that he was rejecting portions of Ms. Berry's testimony that were inconsistent with the medical record "may be reasonably discerned," *see Molina*, 674 F.3d at 1121 (citing *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)), and inconsistency with medical evidence is a germane reason for discounting lay witness statements, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ did not err at Step Five of the sequential evaluation by finding Kelly could perform other work in the national economy. Kelly's arguments turn upon her allegations of error concerning the ALJ's evaluation of the medical evidence, and she has not shown the ALJ committed harmful error at this earlier stage of the analysis. The ALJ's formulation of the hypothetical to the vocational expert as excluding jobs that predictably entail supervisors with a harsh, critical

style but including jobs that still involve some supervisory interaction was based on a rational interpretation of the opinions of the state agency physicians that Kelly was capable of handling jobs with normal supervision that was not overly harsh or critical. We uphold the ALJ's reasonable interpretation of this evidence. *See Ryan*, 528 F.3d at 1198.

**AFFIRMED.**